**NEW YORK TRAP ROCK CORP. v. COLONIAL SAND & STONE CO., Inc. et al.**

**THE FRANK C. MERTZ.**

**THE BUCHANAN SISTERS.**

**No. 19096.**

United States District Court
E. D. New York.
March 2, 1953.

---

Hagen & Eidenbach, New York City, proctors for libelant, by Henry C. Eidenbach, Richard A. Hagen, New York City, advocates.

Macklin, Speer, Hanan & McKernan, New York City, proctors for respondent Colonial Sand & Stone Co., Inc., by Leo F. Hanan, Richard S. Leahy, New York City, advocates.

Foley & Martin, New York City, proctors for tug Buchanan Sisters, by Christopher E. Heckman, Edward J. Ryan, New York City, advocates.

INCH, Chief Judge.

This is an action in admiralty by New York Trap Rock Corporation to recover damages resulting from the sinking of its scow Frank C. Mertz on November 9, 1947, when it became grounded on an obstruction near the north dock of the consignee, Colonial Sand & Stone Co., Inc. at Astoria, New York.

Libelant contends that the consignee, Colonial Sand & Stone Co., Inc. failed to furnish the scow with a safe and proper berth. The fault alleged against the tug Buchanan Sisters is that the tug shifted the scow from a safe to an unsafe berth.

The preponderance of credible evidence establishes the following facts:

1. On November 8, 1947 libelant's deck scow Frank C. Mertz, loaded to a draft of approximately 9 feet with a cargo of 688 tons of crushed stone consigned to Colonial Sand & Stone Co., Inc., was towed to the Colonial plant at Astoria, New York.

2. The Colonial plant is shown on libelant's Exhibit 8 and is designated by the encircled numeral 165. It consists of a slip which is bordered on the northerly side by a dock that extends out into the East River for a distance greater than the depth of the slip. This dock is referred to by the parties as the "south dock".

3. The northerly side of the slip ends in a bulkhead which runs in a northerly direction along the river to a vacant or abandoned pier which is adjacent to but not a part of the Colonial plant and is indicated on libelant's Exhibit 8 by the encircled numeral 164. This bulkhead is referred to by the parties as the "north dock".

4. On the south side of the vacant pier was a submerged wreck which had been there for many years and part of which was plainly visible at low water.

5. At 5:00 P.M. on Saturday evening, November 8, 1947 the scow Mertz was moored on the outside of three other loaded scows which were berthed on the north side of the south dock and out toward the river end of the dock. Further up in the slip were the empty scows Shamrock 110 and Triboro 14. At this time the light scow Blarney Stone was moored to the north bulkhead.

6. Sometime after 5:00 P.M. on Saturday, November 8, 1947 the partly loaded Central Railroad of New Jersey covered barge number 328 was moored outside The Mertz, thereby increasing the number of scows in the tier to five.

7. The Mertz while moored in this tier of scows on the north side of the south dock was in a safe and proper berth.

8. When the tug Buchanan Sisters arrived at the Colonial plant on the early morning of Sunday, November 9, 1947, it found the various scows in the above described positions with the exception of The Blarney Stone which it found in a

position across the slip, directly south of the berth it had previously occupied.

9. The tug Buchanan Sisters had orders to tow the empty scows Shamrock 110 and Triboro 14 from the Colonial plant to Port Washington.

10. Finding the entrance to the slip obstructed by the tier of five scows and The Blarney Stone, the tug Buchanan Sisters first shifted The Blarney Stone back to approximately its original berth on the face of the north dock. It then shifted The Jersey Central 328 and The Mertz as a unit from the tier of 5 scows and moored The Jersey Central 328 outside The Blarney Stone with The Mertz outside The Jersey Central 328.

11. As a result of this shift the stern of The Mertz was in close proximity to the partially submerged wreck which was adjacent to the up-river end of the north dock.

12. The tug Buchanan Sisters then picked up the scows Shamrock 110 and Triboro 14 and towed them away.

13. The tug Buchanan Sisters performed these shifts shortly before 1:35 A.M. when the tide was at about its lowest stage.

14. The master of the tug Buchanan Sisters had knowledge of the Colonial plant area for approximately twenty years and admittedly knew of the existence and general location of the submerged wreck.

15. Although there were bargees aboard The Blarney Stone and Mertz, the mooring lines of all three scows shifted to the north dock were made fast by the deckhand of the tug Buchanan Sisters.

16. At approximately 9 A.M. on Sunday morning, on the next falling tide, the bargee of The Mertz discovered the scow listing offshore and to starboard. As the tide continued to ebb the list increased and the bargee started his pumps. Shortly thereafter a watchman of the Colonial Sand & Stone Co., Inc., who had arrived at the plant earlier that morning, notified his employer and the New York Trap Rock Corporation of the condition of the barge.

17. On this falling tide the bow of The Mertz became completely submerged with the stern remaining out of the water and apparently resting on a submerged obstruction.

18. Subsequent inspection by a diver showed that the stern of The Mertz was resting on wreckage and protruding piles.

19. The diver found a hole approximately 10 feet from the starboard side of the scow which required a patch about 2½ feet fore and aft and 5½ feet athwartship.

The tug Buchanan Sisters contends that since it shifted The Mertz at low water it was impossible for it to have placed The Mertz over the wreck. However, the master of the tug admitted on cross-examination that there was an eddy at the Astoria dock which tended to set the three scows moored to the north dock in a northerly direction toward the wreck. He further testified that while he knew of the existence and general location of the wreck, he did not know the exact position and extent of the submerged portion of the wreck. Also, the deckhand of the tug testified that there was some slack in the mooring lines. Thus it was foreseeable that the heavily ladened Mertz, moored to the partly loaded Jersey Central 328 which was in turn moored to the light Blarney Stone, would drift over the wreck on the rising tide and would be fouled by it on the next falling tide. In my judgment it was this action of the current in combination with the other factors above mentioned which caused The Mertz to foul the submerged wreck, and it was the failure of the tug Buchanan Sisters to anticipate this result that was the proximate cause of the sinking. Moreover, there was no necessity for shifting The Mertz to a berth outside The Jersey Central 328 and Blarney Stone and into close proximity with the sunken wreck when other berths were readily available. The tug Buchanan Sisters made no attempt to return The Mertz to her former berth or to any other safe berth.

On this record I find no reason for imposing liability on the respondent Colonial Sand & Stone Co., Inc. Colonial took no part in shifting The Mertz and had no knowledge until after the damage had occurred that the scow had been shifted at all. As consignee, it had not only furnished the scow with an admittedly safe berth, but there were other safe berths available for The Mertz when the tug Buchanan Sisters found it necessary to shift the scow. In view of the knowledge of the master of the tug as to the general location of the wreck, it cannot be said that Colonial held out or offered the berth in which The Mertz sustained damage to be a safe and proper berth. Accordingly, I make the following additional findings of fact and the following conclusions of law:

20. There was no necessity for the tug Buchanan Sisters to shift The Mertz in close proximity to the submerged wreck because its original berth and other safe berths were readily available.

21. The tug Buchanan Sisters unnecessarily shifted The Mertz from a safe to an unsafe berth and failed to take into consideration the known effect of tidal and current forces.

22. Colonial Sand & Stone Co., Inc., took no part in shifting The Mertz from a safe to an unsafe berth, and the shifting was performed without its knowledge or consent.

23. Colonial Sand & Stone Co., Inc., did not hold out or offer the berth in which The Mertz sustained damage to be a safe and proper berth.

### Conclusions of Law.

I. The tug Buchanan Sisters is liable for the damages resulting from the sinking of the scow Frank C. Mertz.

II. Respondent Colonial Sand & Stone Co., Inc., was not at fault and the libel should be dismissed as against Colonial Sand & Stone Co., Inc., with costs.

III. The sinking of the scow Frank C. Mertz was not caused or contributed to by any fault on the part of libelant.

Settle appropriate decree.